## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ALVIN PERKINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Cause No. 3:19-cv-01040-GCS** |
| | ) | |
| **LUCAS A. BOHNERT,** | ) | |
| **ANTHONY WILLS, in his official** | ) | |
| **capacity,** | ) | |
| **JASON B. MIGNERON,** | ) | |
| **and** | ) | |
| **JOHN RESTOFF,** | ) | |
| | ) | |
| **Defendants.**[1] | ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Alvin Perkins, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center ("Menard"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Perkins asserts claims of excessive force, failure to protect, and deliberate indifference to his serious medical needs. He seeks monetary damages and injunctive relief. For the reasons delineated below, the Court denies Defendants' motion for summary judgment as to exhaustion of administrative remedies.

---

[1]     Pursuant to Federal Rule 25(d), the Court **SUBSTITUTES** Anthony Wills, in his official capacity as the Warden of Menard Correctional Center, as a Defendant for Frank Lawrence. Thus, the Court **DIRECTS** the Clerk of the Court to reflect this substitution on the docket sheet.

FACTUAL BACKGROUND

Perkins filed this lawsuit on September 24, 2019. (Doc. 1). The complaint alleges the following:  On April 24, 2019, Perkins was being taken to his cell to pack up for a move to protective custody or segregation. *Id.* at p. 5. Several officers, including Migneron, Restoff, and Bohnert, assaulted Perkins when he would not re-enter his old cell. *Id.* Bohnert and Restoff assaulted Perkins again while moving him from his old cellhouse to the Medical Unit. *Id.* at p. 6.

During his stop at the Medical Unit, Perkins was seen by two unidentified staff members. (Doc. 1, p. 8). One staff member took a video of Perkins and then Restoff stopped the staff member from examining him. *Id.* Another staff member dabbed at the swollen and bleeding side of Perkins's head. *Id.* Restoff ordered Perkins to leave the Medical Unit over his protests. *Id.* Restoff and Bohnert then escorted Perkins to segregation, again assaulting him on the way. (Doc. 1, p. 7). Perkins put in several requests to see medical staff about headaches, arm and head injuries, but was not seen for a month. *Id.* at p. 8.

In the screening order, the Court allowed Perkins to proceed on three counts:

Count 1:     Eighth Amendment claim for excessive force against Migneron, Restoff, and Bohnert.

Count 2:     Eighth Amendment claim for failure to intervene against Migneron, Restoff, and Bohnert.

Count 3:     Eighth Amendment claim for deliberate indifference to a serious medical need against Restoff and Bohnert.

(Doc. 10).

Relevant to this action, the record contains the following grievances that Perkins filed: On July 3, 2019, the Administrative Review Board ("ARB") received five grievances from Plaintiff, four dated May 29, 2019 and one dated June 28, 2019. Out of these five grievances, four were relevant to the allegations in Perkins's complaint.

The first grievance is dated May 29, 2019 and alleges that on April 24, 2019, Perkins was denied prompt medical treatment after being injured when he was assaulted by correctional staff at Menard.  This grievance did not contain a response from a Menard counselor, grievance officer, or the Chief Administrative Officer ("CAO").

The second grievance is also dated May 29, 2019 and alleges that on April 24, 2019, Perkins was assaulted by Defendants Restoff and Bohnert while being escorted from the west wing of the prison. He also alleges that he was denied medical assistance when he was taken to the healthcare unit. This grievance did not contain a response from a Menard counselor, grievance officer, or the CAO.

The third grievance dated May 29, 2019 alleges that on April 24, 2019, the west house authorities, along with Defendant Migneron, physically attempted to force Perkins to enter a cell. This grievance does not contain a response from a Menard counselor, grievance officer,  or the CAO.

The fourth grievance is dated June 28, 2019 and alleges that Perkins wrote several grievances about being assaulted on April 24, 2019, not being given medical treatment for his injuries, and not having his grievances answered. Like the other three grievances,

this grievance did not contain a response from a Menard counselor, a grievance officer, or the CAO.

On July 9, 2019, the ARB responded to Perkins's five grievances and returned them indicating that additional information was required. Specifically, the ARB instructed Perkins to provide a copy of the grievance including the grievance officer's and the CAO's response.

The record does not contain grievances relative to this action being submitted to the grievance office at Menard prior to July 3, 2019 or after the ARB returned the grievances on July 9, 2019. The record does contain grievances of Perkins properly appealing several unrelated grievances to the ARB.

The Court held an evidentiary hearing on October 19, 2020.  During the hearing, Perkins testified that he was aware of the grievance process at Menard. Perkins also testified that he submitted thirteen grievances from April 29, 2019 through the end of June 2019 and that he never received a single response to any of them.[2] Specifically, he averred that he submitted six in April 2019 with no answer; four in May 2019 with no answer; and three in June 2019 with no answer. He stated that all but one of these grievances pertained to the allegations in the complaint and the one that did not pertain to the allegations was a grievance for not receiving responses to his grievances.

As to these thirteen grievances, Perkins testified that he asked Counselor Hood if they had the grievances. Counselor Hood replied no and instructed Perkins to submit the

---

[2]        During this time frame, Perkins was housed in segregation.

grievances in the black box. Perkins asserts that he told Counselor Hood that he was putting them in the black box. Perkins submitted a kite to Counselor Hood regarding these grievances.  An entry on May 24, 2019 from Counselor Hood states: "[y]our kite regarding grievances was sent to the appropriate office, I do not have the number of the grievances filed or when they were received, grievance numbers would better assist the grievance office in answering your questions." (Doc. 25-2, Exh. B, p. 8). In a May 31, 2019 entry Counselor Hood responded: "[g]rievances will not be personally picked up by the counseling department, the portable grievance box is the only way they will be picked up." *Id.* Perkins complained to Counselor Hood about the thirteen grievances in that he had not received a response or numbers for them and that he did not know where they were. A June 28, 2019 entry indicates that Counselor Hood conducted a gallery tour and Perkins complained to her that he wrote thirteen grievances, that he did not know where they were, and Counselor Hood advised Perkins to write the appropriate department with the grievance numbers that he had. *Id.*

Perkins admitted that he sent five grievances (four of which pertained to the allegations in the complaint) to the ARB on July 13, 2019. Perkins also admitted that the ARB sent the grievances back to him stating that he needed responses from the grievance counselor and from either the grievance officer or the warden and that he did not resubmit the grievances as directed by the ARB.

### Legal Standards

Summary judgment is "proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are]

entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added).

Generally, the Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility or to determine the truth of the matter. Instead, the Court is to determine whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).  In *Pavey*, however, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury, but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008).

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)(noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to use a prison's grievance

process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

In *Pavey*, the Seventh Circuit set forth procedures for a court to follow in a situation where failure to exhaust administrative remedies is raised as an affirmative defense. The Seventh Circuit stated the following:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate.  (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over.  (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey*, 544 F.3d at 742.

As an inmate confined within the IDOC, Plaintiff was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims properly. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The grievance officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. *See* 20 ILL. ADMIN. CODE § 504.850(a). The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its

findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances.  The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

The grievance procedures also allow an inmate to file an emergency grievance. *See* 20 ILL. ADMIN. CODE § 504.840. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine that] there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender [such that] the grievance [should] be handled on an emergency basis." 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender indicating what action shall be or has been taken." 20 ILL. ADMIN. CODE § 504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process."  20 ILL. ADMIN. CODE § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

### ANALYSIS

Defendants contend that they are entitled to summary judgment as Perkins did not exhaust his administrative remedies regarding the claims in this lawsuit prior to filing

his complaint. Specifically, Defendants contend that there is no record that Perkins submitted the relevant grievances through the institutional process after his ARB submission was returned with instructions of what was required for proper review. Perkins counters that he did submit thirteen grievances, twelve of which pertained to the incidents in the complaint, and that he did not get a response. Perkins further contends that Defendants are aware of this in Menard.

First, the record clearly indicates that Perkins was aware of the grievance procedures at Menard. Perkins testified that he knew of the grievance process. Perkins likewise understood such steps when he filed his grievances with the prison and when he filed his complaint. The record reflects that in the past Perkins successfully and correctly used the grievance procedures in other unrelated matters.

The Court notes that in some circumstances an inmate's ability to exhaust the grievance process may be thwarted. This can occur, for example, if an inmate properly submits a grievance, but does not receive a response. In such circumstances, an inmate's administrative remedies are arguably no longer available to him, and the inmate may thus proceed with a lawsuit. *See, e.g., Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2000)(noting that an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole*, 438 F.3d at 809 (noting that a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources).

The determination of whether Perkins exhausted his administrative remedies as to the claims in this case rests on a credibility determination. Considering the record, the

undersigned finds that Perkin's version of events surrounding these thirteen grievances appears to be internally consistent.  He claims that he wrote thirteen grievances, which were not responded to and apparently were either lost or not processed after he gave the grievances to the officers to put in the black box. Because he was in segregation, Perkins could only submit his grievances to the officers for it to be placed into the black box. Once Perkins submitted these grievances to the officers, he was no longer in control of the grievances. After he submitted these grievances, Perkins later asked Counselor Hood about their whereabouts. His version of events is corroborated by the cumulative counseling summary entry (Doc. 25-2, Exh. B, p. 8) which references and confirms the fact that Perkins complained to Counselor Hood about receiving no responses to his thirteen grievances.

Defendants counter that the grievance process was clearly available to Perkins given the volume and types of complaints he was able to make.  However, this fact does not assist the Defendants' arguments. In reviewing the cumulative counseling summary (Doc. 25-2, Exh. B) during the relevant time period, Perkins grieved things as minor as not receiving a razor to more serious matters such as needing medical/dental treatment for gum pain. Given the fact that Perkins has a consistent history of grieving matters both seemingly trivial and major, it is evident that Perkins clearly would have grieved about the more serious matter of having been assaulted by prison staff, and he claims that he did just that. Perkins also clearly knew how to grieve these matters properly. This is demonstrated by the fact that Perkins knew he was supposed to get a response from his counselor as a first step, which explains why Perkins consistently asked his counselor

about the status of his multiple grievances. However, once Perkins submitted the grievances in accordance with the institution's rules and regulations, there was nothing further he could do. In light of the above, the Court finds that Perkins's testimony is credible and that the failure of the institution to respond and/or process his grievances properly led to the grievance process being unavailable to him. As such, Defendants did not meet their burden of proof, and their motion for summary judgment as to exhaustion of administrative remedies must be denied.

### CONCLUSION

Based on the foregoing, the Court **DENIES** Defendants' summary judgment motion as to exhaustion of administrative remedies.

**IT IS SO ORDERED.**

Dated:  December 9, 2020.

Digitally signed by Judge Sison 2
Date: 2020.12.09 13:48:45 -06'00'

GILBERT C. SISON
United States Magistrate Judge